UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEANIE FORD-WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:16-CV-1272-NCC |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Jeanie Ford-Williams ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et. seq.* and §§ 1381, *et. seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 17), Defendant has filed a brief in support of the Answer (Doc. 23), and Plaintiff has filed a reply to the Answer (Doc. 25). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 10).

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff filed her application for DIB on December 12, 2013, alleging an onset date of November 22, 2013. (Tr. 169-77). Plaintiff was initially denied for DIB on February 14, 2014, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") on March 4, 2014. (Tr. 79-85). Plaintiff also applied for SSI on April 21, 2015 and her application was escalated to the ALJ level with Plaintiff's application for DIB. (Tr. 33, 193-98, 273). The ALJ conducted a hearing on April 23, 2015. (Tr. 30-64). After the hearing, by decision dated May 4, 2015, the ALJ found Plaintiff not disabled. (Tr. 12-29). On June 3, 2016, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

# II. DECISION OF THE ALJ

The ALJ found Plaintiff has not engaged in substantial gainful activity since November 22, 2013, the alleged onset date. (Tr. 17). The ALJ found Plaintiff has the severe impairments of migraines and anxiety disorder, but that no impairment or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17-18).

After considering the entire record, the ALJ determined Plaintiff has the Residual Functional Capacity ("RFC") to perform light work with the following limitations. (Tr. 19). Plaintiff is limited to lifting up to 20 pounds occasionally and 10 pounds frequently. (*Id.*). She is limited to standing or walking for up to six hours of an eight hour workday and to sitting for up to six hours of an eight hour workday. (*Id.*). Plaintiff cannot climb ropes, ladders, or scaffolds. (*Id.*). She should avoid exposure to work hazards like unprotected heights or dangerous moving machinery. (*Id.*). Plaintiff is able to understand, remember, and carry out

short, simple instructions consistent with unskilled work. (*Id.*). She can tolerate brief, occasional contact with coworkers and supervisors, and minimal, superficial contact with the general public. (*Id.*). The ALJ determined that Plaintiff is not able to perform any of her past relevant work, that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including folding machine operator, garment sorter, and collator operator. (Tr. 24-25). Therefore, the ALJ found Plaintiff not disabled. (Tr. 25). Plaintiff appeals, arguing substantial evidence does not support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but

is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

5

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff argues the ALJ erred by failing to include all of her credible limitations in the RFC. (Doc. 17 at 8). Specifically, Plaintiff argues the RFC is inconsistent with the Medical Source Statement—Mental ("MSSM") from Bhaskar Gowda, M.D., Plaintiff's treating psychiatrist, even though the ALJ assigned Dr. Gowda's opinion significant weight.[2] (Doc. 20 at 9). For the following reasons, the Court finds Plaintiff's arguments without merit and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

The Regulations define RFC as "what [the claimant] can do" despite her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite her impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).

---

[2] The parties agree that Dr. Gowda is Plaintiff's treating psychiatrist. (Doc. 17 at 7; Doc. 23 at 7).

6

Plaintiff does not challenge the ALJ's assignment of significant weight to Dr. Gowda's opinion. Rather, Plaintiff argues the RFC is flawed because it fails to capture all the limitations in the MSSM. "A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Reece v. Colvin*, 834 F.3d 904, 908-09 (8th Cir. 2016) (internal quotations omitted). "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'" *Id.* at 909 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must give good reasons for doing so." *Id.* "The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) (citing *Metz v. Shalala*, 49 F.3d 374, 378 (8th Cir. 1995)). This is especially true when the consulting physician's opinion is "contradicted by the evaluation of the claimant's treating physician." *Hancock v. Sec'y of Dep't of Health, Educ. & Welfare*, 603 F.2d 739, 740 (8th Cir. 1979).

Dr. Gowda completed his MSSM on April 16, 2015. (Tr. 448-49). He stated that Plaintiff would not miss work because of "bad days," but would be off-task approximately 10% of the time due to a lack of focus. (Tr. 448). Dr. Gowda then gave his opinion on Plaintiff's limitations in several areas. (*Id.*). The MSSM form called for Dr. Gowda to choose from among "mildly limited," "moderately limited," "markedly limited," or "extremely limited" for each

category.³ (*Id.*). Dr. Gowda indicated Plaintiff is only mildly limited in her ability to remember locations and work-like procedures. (*Id.*). Dr. Gowda further opined that Plaintiff is moderately limited in her ability to understand, remember, and carry out very short and simple instructions, and in her ability to understand, remember, and carry out detailed instructions. (Tr. 448-49). According to Dr. Gowda, Plaintiff is also moderately limited in 19 areas including her ability to maintain attention and concentration for extended periods, perform activities within a schedule, sustain an ordinary routine, work in coordination with or proximity to others, complete a normal workday or work week without interruption from psychologically-based symptoms, accept instructions and respond appropriately to criticisms from supervisors, adapt to changes in the work setting, be aware of normal hazards, and work independently. (Tr. 448-49). Dr. Gowda did not find Plaintiff either "marked limited" or "extremely limited" in any category. (*See id.*).

The Court finds that the ALJ properly weighed the opinion of Dr. Gowda and incorporated the credible limitations from Dr. Gowda's MSSM in the RFC. The ALJ correctly afforded Dr. Gowda's opinion significant weight, finding it largely consistent with the moderate restrictions demonstrated by the overall evidence. (Tr. 22). To the extent Plaintiff argues that the RFC is inconsistent with Dr. Gowda's opinions, the Court rejects this argument. On the MSSM, Dr. Gowda indicates only moderate limitations in social interaction and only moderate limitations in following instructions. (Tr. 449). The RFC restricts Plaintiff to "occasional contact with coworkers and supervisors, but in small numbers and for short periods of time," and only "minimal, superficial contact with the general public." (Tr. 19). Plaintiff is also limited to unskilled work with short, simple instructions. The moderate limitations in the MSSM are not

---

³ Relevant to the current analysis, the form does not define the term "mildly limited" but defines the term "moderately limited" as "comparable with some, but not all, useful functioning. Considered to be 1 standard deviation below the norm, or 30% overall reduction in performance." (Tr. 448).

8

inconsistent with the ability to perform unskilled work with limited interactions with others. In light of the restrictive limitations found by the ALJ, the Court finds that the limitations included in the RFC are consistent with Dr. Gowda's opinion.

The Court also rejects Plaintiff's argument that the ALJ must include all the limitations indicated in Dr. Gowda's opinion. The ALJ may decline to assign a treating source controlling weight if the ALJ cites good reasons for doing so. *See Reece*, 834 F.3d at 906. Here, the ALJ did not give the opinion of Dr. Gowda controlling weight and, therefore, did not need to adopt every limitation identified by Dr. Gowda. Instead, she assigned the MSSM "significant weight" because she found Dr. Gowda's opinion "generally consistent with the moderate restrictions demonstrated by the overall evidence" and because his opinion is consistent with a finding that Plaintiff is not disabled despite her reduced focus. (Tr. 22). However, the ALJ properly included limitations found in Dr. Gowda's opinion to the extent she found the opinion consistent with the record.

In fact, in determining Plaintiff's RFC, the ALJ conducted a thorough review of the medical evidence and found that the objective medical evidence establishes diagnoses of migraines and generalized anxiety disorder, but that the evidence was inconsistent as to the alleged severity of Plaintiff's limitations. (Tr. 20). The Court finds that the record supports this analysis. The earliest medical evidence of Plaintiff's mental impairments is from Thomas Spencer, Psy.D, who performed a consultative examination on June 13, 2013. (Tr. 276-279). Dr. Spencer opined that Plaintiff was able to "understand moderately complex instructions" and "complete moderately complex tasks," although she demonstrated "moderate impairment[s]" in interacting socially and adapting to changes in the workplace. (Tr. 279).

Further medical evidence shows that Plaintiff's mental health has mostly been managed by her primary care physician through conservative treatment. Failure to seek aggressive treatment from a mental health professional is a relevant consideration when assessing mental impairments. *See Kirby v. Astrue*, 500 F.3d 705, 708-09 (8th Cir. 2007) (affirming ALJ's finding that claimant did not suffer significant impairment due to psychiatric illness when claimant had never had any formal treatment by psychiatrist, psychologist, or other mental health professional on a long-term basis); *Vanlue v. Astrue*, No. 4:11CV595 TIA, 2012 WL 4464797, at *12 (E.D. Mo. Sept. 26, 2012) (affirming the ALJ's finding that depression was not a severe impairment where the claimant had sought only minimal and conservative treatment and the claimant never required more aggressive forms of mental health treatment than medication).

Plaintiff first saw her primary care physician, Kimberly Bohlmann, M.D., regarding her anxiety and crying spells on March 19, 2014. (Tr. 365-68). Dr. Bohlmann prescribed Zoloft for daily use and Valium for use in extreme situations. (Tr. 367). In follow-up visits dated March 31, 2014 and April 23, 2014, Dr. Bohlmann noted that Plaintiff's symptoms were improving on the medication. (Tr. 357-63). In July 2014, Dr. Bohlmann increased Plaintiff's Zoloft dosage after Plaintiff reported increased depression and crying spells after her husband was diagnosed with terminal cancer. (Tr. 349-52). Plaintiff saw Dr. Bohlmann again in September 2014 with depressed mood and crying spells, and her Zoloft was increased. (Tr. 337-40). Plaintiff returned for a follow-up a week later and reported her mood had improved. (Tr. 333-36). In October 2014, Plaintiff reported that she continued to improve. (Tr. 330). Plaintiff then sought treatment in February 2015 upon having difficulties coping with anxiety and the death of her husband. (Tr. 408-11, 417-20). Dr. Bohlmann switched Plaintiff from Zoloft to Lexapro, and referred her for counseling at Pathways Community Health. (*Id.*). Plaintiff met with counselors at Pathways

numerous times in February and March 2015 until Dr. Gowda completed his MSSM in April 2015. (Tr. 422-50).

The Court finds that a longitudinal review of the medical records supports the limitations in the RFC. Although Plaintiff has some impairments, Plaintiff has only received conservative treatment over a relatively short period of time. The ALJ properly incorporated Dr. Gowda's opinion into the RFC to the extent the MSSM was consistent with the moderate findings in the medical evidence. The ALJ is not required to include limitations greater than those demonstrated in the medical record.

The ALJ also declined to include greater limitations in the RFC in part because nonmedical evidence diminished Plaintiff's credibility. The credibility of a claimant's allegations is weakened by evidence she left stopped working for nonmedical reasons. *Medihaug v. Astrue*, 578 F.3d 805, 816-17 (8th Cir. 2009). Here, Plaintiff testified that she quit her last job after a change in ownership, not because of a medical reason. (Tr. 40-42). Furthermore, the ALJ found Plaintiff's daily activities inconsistent with severe limitations. (Tr. 21). The ALJ may discount a claimant's allegations if they are inconsistent with the claimant's daily activities. *See Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996) (plaintiff's complaints were inconsistent with testimony that he cared for chickens and cows, and made weekly trips into town). Plaintiff testified that she was able to drive, go grocery shopping, prepare her own meals, perform household chores, and attend a weekly church service. (Tr. 45-47, 234). Plaintiff also cares for several animals, including chickens, a rabbit, and a dog. (Tr. 387). The ALJ properly determined that Plaintiff's daily activities contradicted her allegations of severe functional limitations.

The ALJ also gave "significant weight" to the opinion of state agency psychiatric consultant Mark Altomari, Ph.D. (Tr. 21-22). State agency medical consultants are highly qualified experts in Social Security disability assessment, and the ALJ must therefore consider their findings. 20 C.F.R. §§ 404.1527(f)(2)(i); *Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2013) (state agency psychologist's opinion supported ALJ's finding that claimant could work despite his mental impairments). After an extensive review of the evidence, Dr. Altomari opined that Plaintiff has moderate limitations in social interaction and carrying out detailed instructions. (Tr. 71-72). However, he ultimately determined that Plaintiff is able to perform unskilled work despite her limitations, and is therefore not disabled. (Tr. 73-75). The ALJ properly relied upon Dr. Altomari's opinion because it he is a highly qualified medical source, and because his opinion is consistent with the medical evidence in the record, as discussed in detail above.

In sum, the ALJ did not err in assessing Dr. Gowda's MSSM. The ALJ properly articulated why she gave significant weight to some of Dr. Gowda's findings and why she incorporated them into the RFC. To the extent Dr. Gowda opined Plaintiff has more severe limitations than set out in the RFC, the ALJ explained that she relied on the MSSM only insofar as it was consistent with other credible evidence in the record. The ALJ is not required to adopt a medical opinion wholesale, nor is she required to adopt limitations that are inconsistent with the record as a whole. Furthermore, the RFC is supported by substantial evidence in that the ALJ properly gave weight to the objective medical evidence, nonmedical evidence, and the medical opinions of Dr. Gowda and Dr. Altomari.

## V. CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 25th day of September, 2017.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE